UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK BRIAN DOBSON,

     Plaintiff,

v.                                                    Case No.:  8:24-cv-664-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Mark Brian Dobson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.     Procedural History

Plaintiff applied for supplemental security income benefits on July 5, 2022, alleging disability beginning July 15, 2006. (Tr. 97, 108).[1] The application was

---

[1] The ALJ noted that SSI is not payable before the month following the month in which the

denied initially and on reconsideration. (Tr. 97, 108). Plaintiff requested a hearing and on September 20, 2023, a hearing was held before Administrative Law Judge Donald Smith ("ALJ"). (Tr. 66-96). On October 4, 2023, the ALJ entered a decision finding Plaintiff not under a disability since July 5, 2022, the date the application was filed. (Tr. 11-22).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on January 18, 2024. (Tr. 1-6). Plaintiff filed a Complaint (Doc. 1) on March 13, 2024, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

### D.    Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 5, 2022, the application date. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease; hypothyroidism; hyperlipidemia; epilepsy; hearing loss; gastroesophageal reflux disorder (GERD); obesity; personality disorder; depression; borderline intellectual functioning; schizoaffective disorder; and bipolar disorder." (Tr. 14). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of

---

application was filed. (Tr. 12). Even so, the ALJ stated that he considered the complete medical history. (Tr. 12).

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

§§ 416.920(d), 416.925, and 416.926). (Tr. 14).

Before proceeding to step four, the ALJ found that Plaintiff had the following

RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant can lift up to 20 pounds occasionally and 10 pounds frequently; can stand and walk up to 6 hours, and sit up to 6 hours, in an 8 hour workday; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can perform work which does not require exposure to loud noise, vibration, hazardous machinery, and heights; can understand, remember, and carry out routine and repetitive instructions and tasks; can manage or deal with occasional changes in routine work settings or duties; can perform work which does not require a specific production rate or pace; can have occasional interaction with the public, coworkers, and supervisors; and can maintain attention and concentration for 2 hours at a time, but does require the standard morning, lunch, and afternoon breaks.

(Tr. 16).

At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 20). At

step five, the ALJ found that considering Plaintiff's age (39 years old on the

application date), education (limited), work experience, and RFC, there were jobs

that existed in significant numbers in the national economy that Plaintiff could

perform. (Tr. 20). Specifically, the vocational expert testified that a person with

Plaintiff's limitations could perform such occupations as:

(1)   Warehouse Checker, DOT[2] 222.687-010, light, unskilled

(2)   Night Cleaner, DOT 323.687-014, light, unskilled

(3)   Decorating Inspector, DOT 579.687-014, light, unskilled

(Tr. 21). The ALJ concluded that Plaintiff had not been under a disability since July 5, 2022, the date the application was filed. (Tr. 21).

## II.    Analysis

On appeal, Plaintiff raises four issues:

(1)    Whether the ALJ erred in finding Plaintiff does not satisfy the Paragraph B criteria for Listings 12.04, 12.08, or 12.11 at step three;

(2)    Whether the ALJ erred in failing to evaluate Plaintiff's Schizoaffective Disorder at step three;

(3)    Whether the ALJ properly assessed Plaintiff's RFC given his severe impairments; and

(4)    Whether the ALJ erred in finding there were a significant number of jobs in the national economy that Plaintiff could perform at step five.

(Doc. 14, p. 3, 11, 12, 15). The Court begins with the first two issues.

### A.    Listings 12.03, 12.04, 12.08, or 12.11

Plaintiff argues that the ALJ's finding at step three of the sequential evaluation that Plaintiff had only moderate limitations in four paragraph B mental functional areas is not supported by substantial evidence. (Doc. 14, p. 3). Plaintiff claims that he has at least marked limitations in some of these functional areas. (Doc. 14, p. 6,

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

10-11). In the second issue, Plaintiff argues that the ALJ found schizoaffective disorder is a medically determinable severe mental impairment at step two, but did not evaluate either explicitly or implicitly whether Plaintiff met the criteria for listing 12.03 (schizophrenia spectrum and other psychotic disorders) at step three. (Doc. 14, p. 11). Plaintiff's arguments are unpersuasive.

At step three, the burden lies with Plaintiff to show that he has an impairment that meets or medically equals a listed impairment. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008). For an impairment to meet a listing, a plaintiff must show that it meets *all* the specified medical criteria. *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 840 (11th Cir. 2019) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). If an impairment meets only some criteria, then it will not qualify, no matter the severity of the impairment. *Id.* To meet a listing, a plaintiff must have a diagnosis included in a listing and provide medical reports documenting that the conditions meet the specific criteria of a listing and the duration requirement. *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). If a plaintiff satisfies all of the criteria of a listing, then he is considered disabled. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (citing 20 C.F.R. § 416.920a)(4)(iii), (d). An ALJ's finding as to whether a claimant meets or equals a listing "may be implied from the record." *Davenport v. Astrue*, 403 F. App'x 352, 354 (11th Cir. 2010).

Listing 12.03 (schizophrenia and psychotic disorders) and listing 12.04 (depressive, bipolar and related disorders ) contain introductory criteria and paragraph A, B, and C diagnostic criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04. Listing 12.08 (personality and impulse-control disorder) and listing 12.11 (neurodevelopmental disorders) contain paragraph A and B diagnostic criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.08, 12.11.

Paragraph A includes the medical criteria for each listing that must be present in the medical evidence. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.2. Paragraph B of each listing requires evaluations of the four functional areas, which are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.2b. To meet a listing under Paragraph B, a plaintiff must establish an extreme limitation in one area or marked limitation in two of the four areas of mental functioning. *See id.* A moderate limitation means that in an area of mental functioning, a plaintiff's ability to function "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F. A marked limitation means that a plaintiff's ability to function "independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* And an extreme limitation means that a plaintiff is unable "to function in that area independently, appropriately, effectively, and on a sustained basis." *Id.*

Paragraph C provides the criteria used to evaluate serious and persistent mental disorders, meaning that the mental disorder must be serious and persistent and there must be a medically documented history of the existence of the disorder for at least two years. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.2c.

To meet listings 12.03 and 12.04, a plaintiff must satisfy the requirements of both paragraphs A and B, or both A and C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.2. To meet listings 12.08 and 12.11, a plaintiff must satisfy the requirements of paragraphs A and B. *See id.* Here, Plaintiff argues that the ALJ erred in evaluating Plaintiff's paragraph B criteria in finding moderate limitations in all four mental functioning areas for all of the listings. (Doc. 14, p. 4-11).

### 1.    Understanding, Remembering, and Applying Information

Beginning with the area of understanding, remembering, and applying information, the ALJ found that Plaintiff had moderate limitations, relying "on the distinct absence of signs from the claimant's health providers that would demonstrate anything more than moderate difficulty in this area and the claimant's own reports and hearing testimony." (Tr. 14). Specifically, he relied on: (1) physical exam reports from Plaintiff's primary care providers in May and August 2022 that showed no cognitive impairments; (2) reports from psychiatric medication management visits in November 2022, and January and March 2023 by nurse practitioner Aaron Brooks, APRN, who noted that Plaintiff was organized, oriented,

and had intact insight and judgment; and (3) Plaintiff's functional report that he could complete activities of daily living and housekeeping tasks, leave his residence independently, ride a bicycle, use public transportation, shop in stores, and manage his finances. (Tr. 14). The ALJ observed that at the hearing, Plaintiff paid attention, was well focused, understood the questions, and gave relevant and detailed answers, including to questions about the history of his employment and medical treatment. (Tr. 14). Finally, the ALJ found the two State agency psychological consultants' opinions were consistent with a finding of moderate limitations in this area. (Tr. 14-15).

Plaintiff argues that the ALJ cited reports that lacked any psychiatric therapy or counseling. (Doc. 14, p. 4-5). But the cited medical records show that Plaintiff had an appropriate mood, appropriate affect, and no identified cognitive impairments. (Tr. 474, 545). Plaintiff also claims that the ALJ ignored a note that Plaintiff was experiencing auditory hallucinations. (Doc. 14, p. 5). A closer look at that note showed Plaintiff reported experiencing auditory hallucination, but also reported a significant reduction in hallucinations with medication and reported that the hallucinations were not problematic. (Tr. 646).

As to household chores, Plaintiff argues that the ALJ did not acknowledge that Plaintiff explained it could take him all day to sweep vacuum, and clean. (Doc. 14, p. 5; Tr. 298). Plaintiff also argues that the ALJ ignored that Plaintiff explained

that he did not prepare meals because he can't read or understand how to follow cooking directions. (Doc. 14, p. 5; Tr. 298). However, in this function report, Plaintiff stated: he heated premade meals, even though he did not cook for himself; he did not need help with household chores; and as the ALJ reported, Plaintiff independently walked, rode a bicycle, used public transportation, shopped, paid his own bills, handled a savings account, used a checkbook, and could count change. (Tr. 299). The ALJ properly relied on these medical and other records in finding moderate limitations in this area and substantial evidence supports the ALJ's decision.

### 2.    Interacting With Others

Plaintiff contends that the ALJ erred in finding only moderate limitations in the mental functioning area of interacting with others. (Doc. 14, p. 6). Plaintiff claims the ALJ ignored the "overwhelming evidence in the record to the contrary." (Doc. 14, p. 6).

To find Plaintiff had moderate limitations, the ALJ relied on Plaintiff's function report in which Plaintiff reported he did not have any problems getting along with family, friends, neighbors, or others. (Tr. 15). The ALJ also reviewed Plaintiff's records and found that none of Plaintiff's medical providers reported that he had any difficulty getting along with others in a treatment setting, such as with staff or other patients. (Tr. 15). The ALJ also noted that Plaintiff was polite and

appropriate at the hearing, but acknowledged that at some mental health counseling sessions, Plaintiff reported occasional conflicts with roommates and romantic partners. (Tr. 15). Finally, the ALJ found that even though the State agency psychological consultants both opined Plaintiff had mild limitations in this area, the ALJ considered Plaintiff's testimony and other evidence and determined that both support a finding that Plaintiff had moderate limitations in this area. (Tr. 15).

Plaintiff argues that at the hearing, Plaintiff testified that he sees no one other than his brother and explained that he does not get along with people and has anger issues. (Doc. 14, p. 6-7). He described episodes of severe depression and catatonia. (Doc. 14, p. 7). Plaintiff also claims that his romantic relationships were abnormal because Plaintiff had no lasting relationships. (Doc. 14, 7-8). Lastly, Plaintiff argues that his history of incarceration for sexual battery as a juvenile and later arrest for possession of child pornography shows his "patent inability to interact with others 'independently, appropriately, and on a sustained basis.'" (Doc. 14, p. 9-14).

The ALJ listed many reasons in support of finding moderate limitations in this area. In contrast to Plaintiff's arguments, Plaintiff acknowledges that his therapists encouraged him to participate in social interactions, such as going to church and strengthening friendships. (Tr. 659, 660). Further, the ALJ considered the State agency psychological consultants' opinions, but after a review of the evidence, found moderate, not mild, limitations as they had opined. Plus, the ALJ found

Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record. (Tr. 17). And Plaintiff did not contest these findings and therefore they are waived. *See Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (finding in a social security case, issues not raised before the district court are waived). Taking the record as a whole, substantial evidence supports the ALJ's findings that Plaintiff has moderate limitations in this area.

### 3.    Concentrating, Persisting, or Maintaining Pace

Plaintiff argues that the ALJ erred in finding Plaintiff moderately limited in concentrating, persisting, or maintaining pace. (Doc. 14, p. 10). In the decision, the ALJ acknowledged that Plaintiff reported he has limitations in memory, completing tasks, concentration, understanding, and following instructions. (Tr. 15). The ALJ contrasted these statements with reports from Plaintiff's primary care providers who consistently reported that there were no signs of Plaintiff having cognitive impairments, and reports from his treating psychiatric nurse practitioner who consistently reported that Plaintiff was organized, oriented, and had intact insight and judgment. (Tr. 15). The ALJ also noted that at the hearing, Plaintiff was able to concentrate, understand the questions asked, and give relevant responses. (Tr. 15). Lastly, the ALJ determined that moderate limitations in this area were consistent with the opinions of the State agency psychologists' opinions. (Tr. 15).

Plaintiff argues that the ALJ ignored Felix Nwokolo, M.D.'s opinion that Plaintiff had "frequent" deficiencies in this area and ignored State agency psychological consultant Kevin Ragsdale, Ph.D.'s opinion that Plaintiff can only perform "'slower paced SRTs [simple, repetitive tasks]' and 1-3 step job instructions.'" (Doc. 14, p. 10). Plaintiff also testified that he experienced auditory and visual hallucinations at least once a week that lasted several minutes, causing deficiencies in concentration. (Doc. 14,p. 10-11).

The ALJ did not ignore Dr. Nwokolo's opinion. Later in the decision, he summarized Dr. Nwokolo's opinion, but found that his opinion – including that Plaintiff had frequent deficiencies of concentration, persistence, or pace – to be unpersuasive because it was inconsistent with the objective findings reported by Plaintiff's own providers and because it did not address the paragraph B criteria. (Tr. 19). Again, Plaintiff did not contest these findings and thus waived this issue. *See Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011). Likewise, the ALJ did not ignore Dr. Ragsdale's opinion but instead agreed with his opinion that Plaintiff had moderate limitations in this area. (Tr. 15). While acknowledging Plaintiff's claims of problems in this functional area, the ALJ noted that Plaintiff's primary care physicians found no cognitive impairments and his treating psychiatric nurse practitioner found Plaintiff was organized, oriented, and had intact insight and

judgment. (Tr. 15). Substantial evidence supports the ALJ's finding that Plaintiff had moderate limitations in this mental functional area.

Overall, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The ALJ need not refer to every piece of evidence in his decision, so long as a reviewing court can conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Taking the record as a whole, substantial evidence supports the ALJ's decision and the ALJ did not err in finding Plaintiff's impairments did satisfy the paragraph B criteria and therefore did not meet or equal a listing.

### 4.    Schizoaffective Disorder

In the second issue, Plaintiff argues that the ALJ failed to determine whether Plaintiff's severe impairment of schizoaffective disorder met listing 12.03. To meet this listing, Plaintiff must meet the criteria of paragraphs A and B or A and C. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.2. For the reasons stated above, Plaintiff did not meet the paragraph B criteria, which applies equally to this listing and

therefore, the ALJ impliedly considered listing 12.03. *See Davenport v. Astrue*, 403 F. App'x 352, 354 (11th Cir. 2010) ("We have held that the ALJ's finding as to whether a claimant meets a listing may be implied from the record."). Nor does Plaintiff contest the ALJ's finding that Plaintiff failed to establish the presence of the paragraph C criteria and therefore waived this issue. *See Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011). Without satisfying either the paragraph B or C criteria, Plaintiff fails to establish he met listing 12.03. Considering the record as a whole, substantial evidence supports the ALJ's step-three findings.

**B.    Residual Functional Capacity**

Plaintiff claims that the ALJ failed to include several additional limitations when assessing Plaintiff's RFC. (Doc. 14, p. 12). Plaintiff contends that the ALJ's limitation to "occasional interaction with the public, coworkers, and supervisors" does not go far enough. (Doc. 14, p. 12). Plaintiff also argues that the ALJ failed to consider the vocational expert's testimony on how Plaintiff's uncontrolled outbursts would affect him in a workplace environment. (Doc. 14, p. 13). Lastly, Plaintiff claims that the ALJ did not address Plaintiff's severe impairment of epilepsy. (Doc. 14, p. 14).

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In

determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id.*

Plaintiff argues that the ALJ should have included additional limitations for Plaintiff's ability to interact with the public, coworkers, and supervisors. (Doc. 14, p. 12). Plaintiff claims that the ALJ supported the limitation to occasional interaction with the public, coworkers, and supervisors by claiming that Plaintiff engaged in activities such as attending church, being active in the community, making friends, and dating, but these activities were overstated. (Doc. 14, p. 12). Plaintiff also claims he only attended church twice and sat outside during most of the service, and his friendships and romantic dates included talking to a person once and then breaking up. (Doc. 14, p. 12-13).

In the decision, the ALJ limited Plaintiff to occasional interaction with the public, coworkers, and supervisors. (Tr. 16). The ALJ supported this finding by noting that in a July 2022 counseling session, Plaintiff reported that he was spending

more time being active in the community, making friends, and dating. (Tr. 19). The ALJ also noted that Plaintiff's mental health counselors repeatedly referred to Plaintiff engaging in these social activities. (Tr. 18). This evidence supports the ALJ's RFC finding to limit Plaintiff to occasional interactions with the public, coworkers, and supervisors.

Plaintiff also argues that the ALJ failed to consider the vocational expert's testimony on how Plaintiff's uncontrolled outbursts would affect him in a workplace environment when assessing the RFC. (Doc. 14, p. 13). For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ need not include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

In the decision, the ALJ noted that during a telephonic visit with a medical provider in October 2022, the medical provider noted that Plaintiff's mood was

stable. (Tr. 19). The ALJ also found that during other telephonic visits with another medical provider, Plaintiff reported doing well with good symptom control and the medical provider noted that Plaintiff was organized, oriented, and had intact insight and judgment. (Tr. 19). For the ALJ to rely on the vocational expert's testimony, the ALJ need only pose a hypothetical to the vocational expert with findings supported by the record, which the ALJ did.

Lastly, Plaintiff argues that the ALJ failed to adequately consider Plaintiff's severe impairment of epilepsy. (Doc. 14, p. 14). Plaintiff claims that he still had breakthrough seizures even when taking medication, and the seizures occurred once every two weeks. (Doc. 14, p. 14).

In the decision, the ALJ addressed Plaintiff's epilepsy disorder. The ALJ reviewed Plaintiff's Seizure Questionnaire from July 2022. (Tr. 307-309). In that questionnaire, Plaintiff reported that his seizures occur on average 5 times per year, not once every two weeks as he testified. (Tr. 307). Plaintiff also reported his last seizure was in November 2021 while incarcerated, which was over seven months before completing the questionnaire. (Tr. 307). The ALJ noted that since being released from prison, Plaintiff was compliant with his prescribed antiepileptic medication and had not experienced a seizure. (Tr. 17). The ALJ thoroughly considered Plaintiff's severe impairment of epilepsy and substantial evidence supports the RFC assessment.

### C.    Other Jobs in the National Economy

Plaintiff argues that the ALJ erred in his step five findings that there were jobs in the national economy Plaintiff could perform. (Doc. 14, p. 15). Plaintiff first argues that he is unable to determine how the vocational expert arrived at the job numbers at the hearing. (Doc. 14, p. 16). Plaintiff claims that there are actually fewer jobs than the vocational expert claimed. (Doc. 14, p. 16).

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT –

even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

At the hearing, Plaintiff did not object to the vocational expert serving in that capacity nor did he object to the testimony on the job numbers. (Tr. 87). And in the decision, the ALJ found the vocational expert's testimony to be consistent with the information contained in the DOT and that the jobs given by the vocational expert, considered singly and in combination, represent significant numbers in the national economy. (Tr. 21). The ALJ afforded Plaintiff's counsel an opportunity to question the vocational expert, and counsel took full advantage of the opportunity. (Tr. 90-95). Relying on the vocational expert's testimony, the ALJ found that in the national economy, there were approximately 10,600 warehouse checker positions, 212,000 night cleaner positions, and 4,700 decorating inspector positions. (Tr. 21). Plaintiff argues the ALJ erred in relying on the vocational expert's testimony.(Doc. 14, p. 16-17).

According to the Eleventh Circuit, however, an ALJ need not independently verify job numbers.

> [T]to the extent that [Plaintiff] argues that the ALJ was required to independently verify a VE's testimony, we have held that the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT. Here, the conflict is between the number of available jobs the VE reported and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of the Occupational Employment Statistics

> ("OES"). Unlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES.

*Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019). As a result, there was no requirement for the ALJ to have independently investigated and resolved conflicts between a vocational expert's testimony and information provided by Job Browser Pro or other sources, unless specifically raised by Plaintiff at the hearing before the ALJ, which it was not. Thus, based on Plaintiff failing to present evidence to the contrary and the vocational expert's uncontroverted testimony, the ALJ reasonably concluded that Plaintiff could perform the jobs listed and these jobs existed in significant numbers in the national economy. Substantial evidence supports the ALJ's step five finding that there were jobs in significant numbers in the national economy that Plaintiff could perform.

Second, Plaintiff argues that the ALJ relied on vocational expert testimony that was contrary to Plaintiff's RFC in finding Plaintiff capable of performing the job of warehouse checker. (Doc. 14, p. 17). For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362

(11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

Plaintiff argues that reasoning level 2 for the warehouse checker job conflicts with the RFC limitation of understanding and carrying out routine and repetitive instructions and tasks. (Doc. 14, 17). The Eleventh Circuit found it does not. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (finding jobs with a level 2 reasoning level do not conflict with simple, routine, and repetitive work); *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021) ("The ALJ did not err. There is not an apparent conflict here between Buckwalter's RFC, which limits her to the ability to 'understand, carry-out, and remember simple instructions,' and the identified positions with a reasoning level of two. While it is a close question, the two terms can be readily reconciled, so we follow the Fourth and Eighth Circuits and hold that there is no apparent conflict."). Thus, the reasoning requirements of the warehouse checker job do not exceed Plaintiff's RFC.

Plaintiff also argues that he is unable to meet the mathematics and reading requirements of this job. (Doc. 14, p. 17). Plaintiff's only support is his testimony.

(Doc. 14, p. 17-18). As stated above, the ALJ found Plaintiff's statements about the limiting effects of his symptoms not entirely consistent with the medical and other evidence of record. (Tr. 17). Plaintiff fails to support his alleged limitations with any evidence of record other than his subjective statements. Looking at the record as a whole, the ALJ's decision to accept the vocational expert's testimony on Plaintiff's ability to perform the job of warehouse checker is supported by substantial evidence.

Third, Plaintiff argues that the job of night cleaner requires an individual to render personal assistance to patrons, which he is unable to perform because of his severe mental impairments and personality disorder, his outbursts, and his audio and visual hallucinations. (Doc. 14, p. 19). As discussed above, the ALJ considered Plaintiff's mental impairments, including his alleged outbursts and hallucinations in assessing the RFC. The RFC assessment limits Plaintiff to occasional interaction with the public and Plaintiff has not argued that the requirements of this job exceed the RFC assessment. (Tr. 16). Plaintiff also argues that the ALJ should have considered Plaintiff's status as a registered sex offender, which has limitations as to where, when, and with whom he can work. (Doc. 14, p. 20). But these limitations are not physical or mental abilities such that the ALJ must consider them when determining Plaintiff's ability to perform work. *See* 20 C.F.R. § 416.966(b), (c). After considering the record as a whole, substantial evidence supports the ALJ's decision as to the job of night cleaner.

Fourth, Plaintiff argues that the ALJ erred in finding he is able to perform the job of decorating inspector. (Doc. 14, p. 21). Plaintiff presents the same arguments about reasoning and mathematical level that he presented for the warehouse-checker job. For the same reasons, these arguments fail. Plaintiff also argues that by definition, the decorating inspector job requires a specific production rate or pace. (Doc. 14, p. 21). At the hearing, the ALJ posed hypotheticals that included a limitation that the individual could perform work which did not require a specific production rate or pace. (Tr. 88, 89). The vocational expert listed decorating inspector as a job that met this requirement. (Tr. 89). Plaintiff's counsel later asked the vocational expert how he arrived at these jobs, given this limitation. (Tr. 16, 91). The vocational expert explained how he considered quota or production pace jobs as those usually paid by the piece or the product of work, which the decorating-inspector job was not. (Tr. 91). Plaintiff now speculates that this job requires a specific pace but provides no evidence to support this speculation. (Doc. 14, p. 21-22). This speculation is not enough to overcome the vocational expert's testimony. Substantial evidence supports the ALJ's reliance on the vocational expert's testimony and the ALJ's step five findings.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied

the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

      **DONE** and **ORDERED** in Fort Myers, Florida on March 14, 2025.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties